**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SHINOK PARK,<br><br>    *Plaintiff*,<br><br>  v.<br><br>BANK-FUND STAFF FEDERAL CREDIT UNION,<br><br>    *Defendant.* | No. 25-cv-01653 (DLF) |

**MEMORANDUM OPINION**

Shinok Park, proceeding *pro se*, brings this action against Bank-Fund Staff Federal Credit Union seeking injunctive relief and damages for the Credit Union's alleged wrongful acceleration of two of Park's home equity lines of credit (HELOCs) and unlawful initiation of foreclosure proceedings on her home residence and condominium property. Before the Court is the Credit Union's Motion to Dismiss the Amended Complaint, Dkt. 15; Park's Motion to Strike Exhibits and Challenge the Authenticity of Documents Attached to Defendant's Motion to Dismiss, Dkt. 33; and Park's Motion to Take Judicial Notice, Dkt. 36. For the reasons that follow, the Court will grant the Credit Union's motion and deny Park's motions.

## I.     BACKGROUND

This dispute concerns two HELOC loans that Park obtained from the Credit Union in 2014—a $172,000 HELOC for which a condominium that Park was renting to tenants served as collateral and a $134,000 HELOC for which Park's residence served as collateral. Am. Compl.

¶ 9, Dkt. 13.[1]  During the COVID-19 pandemic, Park faced financial hardship due to the loss of her condominium tenants.  *Id.* ¶ 10.  She contacted the Credit Union to "request loan modification or other loss mitigation assistance, but was rejected each time."  *Id.*  In April 2021, a new tenant caused fire damage to the condominium, resulting in damages that "deplet[ed]" Park's financial resources.  *Id.* ¶ 11.  Park applied for and received relief from the D.C. Homeowner Assistance Fund to help pay down the HELOC associated with her residence.  *Id.* ¶ 12.  Although she continued to make monthly payments for the condominium HELOC, the Credit Union misapplied two of her payments, causing her to be behind on her payments due.  *Id.* ¶ 13.

On multiple occasions in 2024, the Credit Union misapplied Park's HELOC payments and refused to provide Park with information regarding how it was applying her funds.  *See id.* ¶¶ 14–15.  The Credit Union issued Park a Notice of Default and Acceleration for the residence HELOC in July 2024, *id.* ¶ 14, followed by a Notice of Default and Acceleration for the condominium HELOC in December 2024, *id.* ¶ 13.  In March 2025, the Credit Union issued a second Notice of Default and Acceleration for both HELOCs.  *Id.* ¶ 16.  Park "requested in writing the breakdown of [the Credit Union's] claimed cure amount" for each HELOC, along with an "updated letter or Notice of Default and Acceleration with correction of the cure amount."  *Id.* ¶ 17.  The Credit Union "refused to provide an official letter."  *Id.*

In February 2025, Park submitted a "Mortgage Assistance Application" for each HELOC.  *Id.* ¶ 19.  Upon the Credit Union's request, Park provided additional documentation in support of her applications in April 2025.  *Id.*

---

[1] On November 3, 2025, Park filed a notice informing the Court that her Amended Complaint, as initially filed, omitted a page.  *See* Notice, Dkt. 19.  For ease of reference, this Memorandum Opinion cites to the Amended Complaint, paragraphs 19 through 22 of which are found only in the document appended to Park's notice.

On April 22, 2025, the Credit Union accelerated both HELOCs, demanding that Park pay the remaining balance on each. *Id.* ¶ 18. Although Park "requested a meeting to discuss and resolve the matters," the Credit Union refused to meet. *Id.*

On May 22, 2025, the Credit Union sent Park two letters informing her that her applications were "determined to be incomplete based on the documentation requirements outlined in the Notice of Incomplete" and "clos[ing]" her applications. Def.'s Ex. B, Dkt. 15-3.[2] Park attempted to appeal the decision in June 2025 but did not receive a response from the Credit Union. Am. Compl. ¶ 20.

On July 17, 2025, the Credit Union sent Park a collection letter "demanding payment of the entire balances of both HELOC loans to avoid foreclosure." *Id.* ¶ 21.

Park filed the operative complaint on September 30, 2025. Her Amended Complaint sets forth five claims for relief: (1) wrongful acceleration and foreclosure in violation of 12 C.F.R. § 1024.41 of the Real Estate Settlement Procedures Act (RESPA) implementing regulations and D.C. Code § 42–815.02 (Count I); (2) failure to provide certain account information in violation of 12 U.S.C. § 2605(e) and D.C. Code § 28–3901 (Count II); (3) improper rejection of loss mitigation application in violation of 12 C.F.R. § 1024.41(c) of the RESPA implementing regulations (Count III); (4) breach of contract (Count IV); and (5) failure to provide disclosures required under the Truth in Lending Act (TILA) (Count V).

---

[2] The Court considers the letters as documents incorporated by reference in the Amended Complaint. *See EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Although Park disputes the authenticity of other documents attached to the Credit Union's Motion to Dismiss the Amended Complaint, *see generally* Mot. to Strike, Dkt. 33, she does not raise any such objections to the Credit Union's May 2025 letters.

## II.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While this standard does not amount to a specific probability requirement, it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  A complaint need not contain "detailed factual allegations," but a complaint that "pleads facts that are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation modified).  And while the Court construes *pro se* complaints "liberally," *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), even a *pro se* complaint must "plead factual matter that permits the court to infer more than the mere possibility of misconduct," *Jones v. Horne*, 634 F.3d 588, 596 (D.C. Cir. 2011) (citation modified). Still, in deciding a motion to dismiss a *pro se* plaintiff's complaint, the Court must consider the plaintiff's complaint "in light of all filings." *Brown v. Whole Foods Mkt. Grp.*, 789 F.3d 146, 152 (D.C. Cir. 2015) (per curiam) (citation modified).

When considering a Rule 12(b)(6) motion, the Court may consider the complaint itself, documents attached to the complaint, documents incorporated by reference in the complaint, and judicially noticeable materials. *St. Francis Xavier Parochial Sch.*, 117 F.3d at 624.  A Rule

4

12(b)(6) dismissal "is a resolution on the merits and is ordinarily prejudicial." *Okusami v. Psychiatric Inst. of Wash., Inc.*, 959 F.2d 1062, 1066 (D.C. Cir. 1992).

## III.    ANALYSIS

### A.    Federal Law Claims

The Credit Union moves to dismiss Park's RESPA claims for failure to state a claim and Park's TILA claim as untimely.[3]  *See* Def.'s Mem. in Supp. of Mot. to Dismiss 1–2, Dkt. 15-1. For the reasons that follow, the Court will dismiss each of Park's federal law claims.

#### 1.    *12 C.F.R. § 1024.41*

Park alleges that the Credit Union violated 12 C.F.R. § 1024.41 of RESPA's implementing regulations when it proceeded with acceleration of her HELOC loans notwithstanding her submission of "complete and timely applications for loss mitigation/loan modification," Am. Compl. ¶ 24, and without properly reviewing or providing a "valid or reasonable explanation" for rejecting those applications, *id.* ¶ 31.

As relevant here, 12 C.F.R. § 1024.41 generally prevents a mortgage loan servicer from proceeding with foreclosure while a borrower's complete loss mitigation application is pending. *See* 12 C.F.R. § 1024.41(f)–(g); *see also id.* § 1024.41(c).  "A complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." *Id.* § 1024.41(b)(1).  "If a servicer receives a loss mitigation application

---

[3] As a preliminary matter, the Court notes that it is not clear whether each of the relevant RESPA statutory and regulatory provisions applies to HELOCs like those at issue in this case. *See Lyons v. PNC Bank, N.A.*, 112 F.4th 267, 278–80 (4th Cir. 2024); 12 C.F.R. § 1024.31 ("*Mortgage loan* means any federally related mortgage loan, as that term is defined in § 1024.2 subject to the exemptions in § 1024.5(b), but does not include open-end lines of credit (home equity plans)."). Because the Credit Union has neither raised nor briefed the issue, the Court will not decide it here.

45 days or more before a foreclosure sale, a servicer shall . . . [n]otify the borrower in writing within 5 days . . . after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete." *Id.* § 1024.41(b)(2)(i)(B). "If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete," *id.*, and "a reasonable date by which the borrower should submit the documents and information necessary to make the loss mitigation application complete," *id.* § 1024.41(b)(2)(ii). "[I]f a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale," it must, within 30 days of receiving the complete application, "[e]valuate the borrower for all loss mitigation options available to the borrower" and "[p]rovide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage." *Id.* § 1024.41(c)(1).

Park has failed to plead a violation of § 1024.41. She alleges that the Credit Union "reject[ed]" her applications by letter in May 2025. Am. Compl. ¶ 19. But the subject letters in fact "closed" her loss mitigation applications based upon a determination that the applications were "incomplete." *See* Def.'s Ex. B. She neither contests that determination nor alleges that the Credit Union failed to identify which documents were missing or provide her with a reasonable amount of time to provide those documents. *See* 12 C.F.R. § 1024.41(b). Because only a complete loss mitigation application triggers the protections of § 1024.41, *see id.* § 1024.41(c), (f)–(g), Park has failed to plead a violation of that provision.

Furthermore, Park's § 1024.41 claim also fails because Park has not alleged damages. A borrower may enforce § 1024.41 pursuant to 12 U.S.C. § 2605(f). *Id.* § 1024.41(a). That statutory

provision, however, makes loan servicers liable to individual borrowers for "any actual damages to the borrower as a result of" the loan servicer's failure to comply with § 1024.41 and "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of [§ 2605], in an amount not to exceed $2,000."  12 U.S.C. § 2605(f)(1). As such, "damages are an essential element in pleading a RESPA claim."  *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016); *see Peek v. Suntrust Bank, Inc.*, 848 F. App'x 6, 7 (D.C. Cir. 2021) ("The district court correctly determined that appellant failed to state a claim for a violation of the Real Estate Settlement Procedures Act, because, to the extent the complaint alleged any violation, the complaint does not allege any actual damages resulting from that violation."); *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013) ("[RESPA] plaintiffs must plead actual damages stemming from the failure to respond to requests or a pattern or practice of misconduct."); *Hintz v. JPMorgan Chase Bank*, N.A., 686 F.3d 505, 510–11 (8th Cir. 2012) (similar); *Conant v. Wells Fargo Bank, N.A.*, 60 F. Supp. 3d 99, 115 (D.D.C. 2014) (similar).  While the Amended Complaint includes a request for "actual damages and statutory damages," Am. Compl. 10, Park has neither alleged actual damages nor clearly identified any "pattern or practice of noncompliance," 12 U.S.C. § 2605(f)(1).[4]

Accordingly, the Court will dismiss Park's § 1024.41 claims.[5]

---

[4] The Court need not decide whether Park can plead statutory damages without pleading actual damages.  *See, e.g.*, *Wirtz v. Specialized Loan Servicing, LLC*, 886 F.3d 713, 719–20 (8th Cir. 2018) ("A borrower cannot recover 'additional' damages [for a 'pattern or practice of noncompliance'] under § 2605(f)(1)(B) without first recovering actual damages.")

[5] In her Opposition to the Credit Union's Motion to Dismiss, Park further alleges violations of 12 C.F.R. § 1024.35 and 12 C.F.R. § 1024.36.  *See* Pl.'s Opp'n 6, Dkt. 30.  Assuming that Park has a private cause of action to pursue those claims, they fail for the same reasons.  *See In re Crockett*, No. 19-101, 2020 WL 425388, at *6 (Bankr. D.D.C. Jan. 27, 2020), *aff'd*, 2023 WL 5221132 (D.D.C. Aug. 15, 2023).

2.    *12 U.S.C. § 2605(e)*

Park further alleges that the Credit Union violated 12 U.S.C. § 2605(e) by failing to respond to her "repeate[d]" requests for "essential information," "including the payment history, the ledger of payments, and detailed account statements" of and associated with her HELOC accounts.  Am. Compl. ¶ 27; *see id.* ¶¶ 3, 28.

Section 2605(e) provides that, "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan," the servicer must generally "provide a written response acknowledging receipt of the correspondence within 5 days," 12 U.S.C. § 2605(e)(1)(A), and take further action on the request within 30 days, *see id.* § 2605(e)(2)(A)–(C).  For the purposes of the provision, a "qualified written request" is defined as a "written correspondence" that (1) "includes, or otherwise enables the servicer to identify, the name and account of the borrower"; and (2) "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  *Id.* § 2605(e)(1)(B).

Park has failed to plead a § 2605(e) claim.  To start, her allegations regarding the form, content, and timing of her requests are vague.  Indeed, except as to one request made in 2025, *see* Am. Compl. ¶ 17 ("Plaintiff requested in writing the breakdown of Defendant's claimed cure amount for the home HELOC and that of condo HELOC."), Park does not clearly allege which of her requests for information were made in writing, *see, e.g.*, *id.* ¶ 14 ("Defendant did not provide how it applied the received funds to the account, despite Plaintiff's request of the information multiple times."); *id.* ¶ 15 ("Defendant did not respond, with no documents provided to Plaintiff, despite her requests of the account's entire payment history, ledger, amortization schedule, among

8

others."). And, even assuming Park's allegations as to her requests are sufficient, Park has again failed to plead any actual damages associated with the alleged violation or a "pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(1); *see* Am. Compl. ¶ 3 ("For years, Defendant failed to provide Plaintiff's requested information, such as payment history and ledger of the loans . . . which caused Plaintiff not only some confusion but also anxiety and distress, related to Defendant's application of her monthly payments and loan status."); *Conant*, 60 F. Supp. 3d at 115 (allegations of "uncertainty," "mental anguish," and "worr[y]" do not show actual damages under RESPA (citation modified)). The Court will thus dismiss Park's § 2605(e) claim.

        3.     *TILA*

Finally, Park alleges that the Credit Union violated TILA "by failing to provide required disclosures regarding the terms and conditions of the HELOC loans, including failure to disclose the correct information regarding payment history and application of payments and charged fees, among others." Am. Compl. ¶ 37.

Park has failed to state a claim under TILA. While a *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers[,] . . . even a *pro se* complainant must plead factual matter that permits the court to infer more than the mere possibility of misconduct." *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681–82 (D.C. Cir. 2009) (citation modified). Here, Park fails to allege which provision(s) of TILA the Credit Union violated. Absent such an allegation, the Court cannot "draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *cf. Jah Kente Int'l, Inc. v. Indus. Bank of Washington, D.C.*, No. 22-cv-848, 2023 WL 11056262, at *2 (D.D.C. June 26, 2023) (court could not draw reasonable inference that the defendant was liable for the misconduct

alleged where the plaintiff "nowhere identifie[d] which provision of the Federal Reserve Act Defendant allegedly violated"). The Court will therefore also dismiss Park's TILA claim.

### B.      State Law Claims

Because the Court will dismiss Park's federal law claims, the Court must determine whether it will continue to exercise supplemental jurisdiction over her remaining state law claims. When a court dismisses "all claims over which it has original jurisdiction," it has the discretion under 28 U.S.C. § 1367(c) to "decline to exercise supplemental jurisdiction" over any remaining state law claims. 28 U.S.C. § 1367(c)(3); *see Trimble v. District of Columbia*, 779 F. Supp. 2d 54, 59–60 (D.D.C. 2011) (declining to exercise supplemental jurisdiction over remaining state law claims). In exercising that discretion, courts consider "judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.* at 350 n.7; *see Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265–67 (D.C. Cir. 1995).

Here, the relevant factors weigh against exercising jurisdiction over Park's state law claims. To start, this case is in the initial pleading stage, and the Court has not yet developed substantial familiarity with Park's state law claims. *See Deppner v. Spectrum Health Care Res., Inc.*, 325 F. Supp. 3d 176, 191 (D.D.C. 2018). Furthermore, Park "will not be prejudiced in any way by dismissal," both because the Court is dismissing her claims without prejudice and because the supplemental jurisdiction statute "not only provides for a thirty-day grace period for refiling in state court after dismissal" but also "stops the clock on any otherwise-applicable limitations period during the pendency of the federal-court suit." *Id.*; *see* 28 U.S.C. § 1367(d); *Artis v. District of Columbia*, 583 U.S. 71, 74–77 (2018). Because the Court declines to exercise supplemental

jurisdiction over Park's state law claims, it will dismiss those claims without prejudice for lack of subject matter jurisdiction.

### C.  Park's Motion to Strike and Motion to Take Judicial Notice

The Court will further deny Park's Motion to Strike, Dkt. 33.  Park has not identified a proper legal basis for striking the exhibits attached to the Credit Union's Motion to Dismiss.  And, in any event, Park does not challenge the only documents on which the Court has relied in resolving the Credit Union's motion—the two May 22, 2025 letters.

Finally, the Court will dismiss as moot Park's Motion to Take Judicial Notice, Dkt. 36. While Park asks the Court to take judicial notice of what appear to be foreclosure proceedings pending in the Superior Court of the District of Columbia, the existence of those proceedings does not impact the Court's analysis as to Park's claims.

### CONCLUSION

For the foregoing reasons, the Court grants the defendant's Motion to Dismiss, Dkt. 15; denies without prejudice the plaintiff's Motion to Strike, Dkt. 33; and dismisses as moot the plaintiff's Motion to Take Judicial Notice, Dkt. 36.  A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

June 23, 2026

11